UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Douglas Hayward

      v.

Bank of New York Mellon, as
Trustee for the Certificateholders,
CWALT, Inc., Alternative Loan Trust
2004-J8, Mortgage Pass-Through
Certificates, Series 2004-J8

Civil No. 22-cv-352-LM
Opinion No. 2023 DNH 109 P

# O R D E R

Plaintiff Douglas Hayward brought this suit, pro se, in state court to enjoin defendant Bank of New York Mellon (the "Bank") from conducting a foreclosure sale on real estate owned and mortgaged by Hayward in Auburn, New Hampshire. The Bank removed the suit to this court and filed a motion to dismiss (doc. no. 4) under Federal Rule of Civil Procedure 12(b)(6). The Bank argues that Hayward lacks standing to contest the mortgage because he is "a non-borrower (and non-contributor) on the loan" and that Hayward's complaint fails to state any claims for relief. Doc. no. 4 at 5. For the following reasons, the court grants the Bank's motion to dismiss, without prejudice to Hayward filing an amended complaint on or before September 8, 2023.

## STANDARD OF REVIEW

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a

plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation omitted).  Generally, the court may consider only the facts alleged in the complaint, exhibits attached to the complaint, and other materials that are fairly incorporated in the complaint or are subject to judicial notice such as matters of public record.  Lowe v. Mills, 68 F.4th 706, 713-14 (1st Cir. 2023); see Butler v. Balolia, 736 F.3d 609, 611 (1st Cir. 2013).  When addressing a pre-discovery motion to dismiss for lack of standing, the court applies the same standard.  Webb v. Injured Workers Pharmacy, LLC, 72 F.4th 365, 371 (1st Cir. 2023).[1]

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense."  Id. at 679.  Finally, as a pro se litigant, Hayward is entitled to a liberal construction of his pleadings, no matter how inartfully they are pled.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

---

[1] To the extent the Bank's motion to dismiss raises a question of Article III standing, Federal Rule of Civil Procedure 12(b)(1) governs rather than Rule 12(b)(6). See Webb, 72 F.4th at 371.  Regardless, the standard of review for the Bank's standing argument is the same as the Rule 12(b)(6) standard because the Bank does not challenge the accuracy of Hayward's jurisdictional allegations, only their sufficiency.  See Freeman v. City of Keene, 561 F. Supp. 3d 22, 25-26 (D.N.H. 2021) (discussing different standards of review for challenges to the court's subject matter jurisdiction).

## BACKGROUND

The following facts are constructed from Hayward's complaint, the documents and forms attached to that complaint, and the documents attached to the Bank's motion to dismiss about which the court may take judicial notice.[2] The court also construes Hayward's December 22, 2022 supplemental memo (doc. no. 16) as a supplement to his complaint, Federal Rule of Civil Procedure 15(d), and, for purposes of addressing the Bank's motion to dismiss, treats as true the factual allegations within it.

On March 31, 2004, Dolores Ross, Hayward, and Hayward's wife, Edna Hayward, executed a mortgage on real property in Auburn, New Hampshire, in connection with that property's purchase. Ross is Hayward's mother. The mortgage lists Ross, Hayward, and Hayward's wife as the borrowers. Hayward also initialed each page of the document and signed it as a "borrower." Doc. no. 4-2 at 15

---

[2] Hayward attached to the complaint the mortgage instrument, promissory note, loan modification terms and documentation, notices of foreclosure auction, property deed, certificate of title, and property tax assessment and history. The court may consider these documents because they were attached to the complaint. Lowe, 68 F.4th at 713-14. The Bank attached to its motion to dismiss additional mortgage-related documents, documents showing the assignment of the mortgage to the Bank, as well as court documents related to Dolores Ross, a borrower on the mortgage and non-party to this case. These are appropriate documents to take judicial notice of and to consider at the motion to dismiss stage. See, e.g., McAllister v. Countrywide Home Loans, Inc., No. 16-10911-GAO, 2017 WL 1173925, at *3 (D. Mass. Mar. 29, 2017) (adopting and approving report and recommendation in part); Zagarella v. Caliber Home Loans, No. 18-12414-NMG, 2019 WL 3021261, at *2 n.4 (D. Mass. June 7, 2019), report and recommendation adopted, 2019 WL 3006960 (July 9, 2019).

(judicially-noticed supporting exhibits to motion to dismiss).  An attachment to the mortgage (doc. no. 4-2 at 17), however, indicates that only Ross was the borrower.

The promissory note related to the mortgage only lists Ross as the borrower and only Ross signed it.  Doc. no. 4-3 at 4.  The note obliged Ross to repay to the mortgagee a principal amount of $274,500.00, plus interest.  The interest rate on the note was 7.375%.  In 2019, it appears that the Bank received an assignment of the mortgagee's rights.  Doc. no. 4-5 at 3.

A deed lists Ross, Hayward, and his wife as owners of the property as joint tenants with rights of survivorship.  Hayward alleges that Ross intended that he and his wife occupy the property.  Hayward and his wife lived at the property, and Hayward made all the loan payments on the mortgage on Ross's behalf.

At some point in 2012, Hayward ceased making payments on the loan. Hayward appears to allege that he stopped making payments in 2013 because "after paying High interest for almost 10 years, [Hayward] attempted a modification which was a very popular event at the time, [due] to government bailouts to all banks offering modifications."  Doc. no. 16 at 1-2 (Hayward supplemental memo). Thus, Hayward "stopped making payments for three [] months which was a pre requisite in order to obtain the chance at a modification . . . ."  Id.  Failing to make the required payments ruined Hayward's credit.

After he stopped making payments, Hayward requested a loan modification from Bank of America.  Bank of America, however, denied the requested modification.  Hayward does not allege why Bank of America denied the requested

modification.  Hayward then fell behind on the loan payments because there was "more than expected monies due" and he could not "catch up due to damaged credit" as well as the economic circumstances of the post-2008 recession.  Id.

Ross filed for chapter 13 bankruptcy in 2019 and 2020.  Doc. nos. 4-6, 4-7. Ross's 2019 petition was dismissed because Ross failed to file certain information. Ross's 2020 petition was dismissed because Ross failed to make plan payments. Filings in the 2020 bankruptcy indicate that the mortgage was behind payments in the amount of $250,514.43 and that no payments had been made on the loan since October 2012.  By the 2020 bankruptcy filing, the total debt under the mortgage had grown to $460,777.19.

Hayward alleges that in July, August, and September 2021, he made payments on the loan as part of a trial period as a precondition to a loan modification.  After Hayward made those trial payments, the mortgage's loan servicer, Shellpoint, approved a loan modification to begin November 1, 2021.

The modification agreement lists Ross as the "borrower" and Hayward and his wife as "Non-Obligors."  Doc. no. 1-1 at 17 (complaint supporting documents). The loan modification would have added to the loan's remaining principal balance $142,184.61 in unpaid interest; $82,855.65 in "advanced escrows";[3] $5,751.55 in legal fees; $7,917.07 in "other fees," and $810.00 in "pending fees," creating a new

---

[3] The court presumes that the "advanced escrows" line item reflects property tax and insurance payments that were made by the mortgage holder rather than Ross or Hayward.

principal balance of $483,729.39.[4]  Doc. no. 1-1 at 18.  The modification would have

changed the mortgage's interest rate and payment schedule as follows:

- From October 2021 until October 2024, the loan would have an interest rate of 2.25%.

- Beginning on November 1, 2021, Ross would be obligated to make 36 monthly payments of about $1,529.27, plus an additional payment to escrow.

- From October 2024 through October 2034, the loan would have an interest rate of 3%.

- Beginning on November 1, 2024, Ross would be obligated to make 119 payments of about $1,718.61, plus an additional payment to escrow.

Id.

The modified mortgage would have terminated on September 1, 2034, the

same as the original mortgage.  Because the modification did not extend the

mortgage's original 30-year term, the loan balance not paid by that time would be

due on September 1, 2034, in a lump sum known as a "balloon payment."  Under the

terms of the loan modification, such balloon payment would be in the amount of

$382,082.82.

It is unclear whether the loan modification ever took effect, as Hayward

indicates in his filings that he did not agree to the terms.  In any event, no

payments were made under the putative loan modification.  The only payments

---

[4] The loan modification documents do not indicate the remaining principal balance on the loan prior to these additions.  Subtracting the added amounts from the new principal balance yields an apparent pre-modification principal balance of $244,210.51.

made on the mortgage since 2012 have been the three trial payments made by Hayward in July, August, and September 2021.

In February 2022, the Bank notified Ross, Hayward, and his wife of its intent to foreclose on the property.  A foreclosure auction was scheduled for April 12, 2022.  A few days before the scheduled auction, on April 7, Hayward filed a form "complaint to enjoin foreclosure" in Rockingham County Superior Court.

The form complaint poses several questions to putative complainants, which Hayward answered.  Hayward explained that the loan modification was "impossible" to maintain because of the balloon payment and "other unexplained [f]inancials."  Doc. no. 1-1 at 1, 3.  Hayward also explained why he was asking the court to enjoin the foreclosure sale and why it would not be fair or equitable for the sale to take place:

> We have lived here since 2004 with my wife and now 17 year old daughter who is a junior in high school. I am turning 60.  And have gotten older here and want to give house to[] my daughter so she can live here and raise a family here.  And so 1. suffer irreparable harm or injury []2.  seek Equity relief.  3. Considering the balance of [] hardship between parties.  4. I will likely be successful on merits. 5. In public best interests. 6. Am willing to[] mediate.  7.Only want a FAIR MODIFICATION.

Id.

Hayward also described on the form why he was likely to suffer irreparable injury without an injunction:

- "[w]ill automatically lose my and my [family's] house of 18+ years";

- "[h]ave invested [a lot] of money[.]  Sweat equity.  And daughter will not finish school at Pinkerton"; and

- "[w]ill lose hundreds of thousands of dollars in earned equity.  [M]odification should . . . have [been approved] when requested with bank of America in 2012.  This situation wouldn't be before the court now."

Id. at 6, 8.  Hayward requested that the court enjoin the foreclosure sale and that it order defendant to provide "a decent loan modification."  Hayward also asked for a hearing so that he could "bring forth my argument on possible deceptive and deceitful business practices.  Offering a modification that was designed to[] fail."  Id. at 6.

Hayward also added that "[i]f modification [were] accepted[,]  [m]atters would not have gotten better[.]  Only prolonging the foreclosure another 12 years[,] having to[] finance 385k[.]  Leaves high failure risk.  Not fair and equitable for one or the other party."  Id. at 8.

The superior court granted a temporary restraining order.  The Bank then removed the case to this court and filed the motion to dismiss now before the court.  Lastly, on December 22, 2022, Hayward filed a supplemental memo, stating that Ross had died and that he was now obliged to pay the note.

## DISCUSSION

The Bank moves to dismiss, arguing that Hayward lacks standing and that Hayward's complaint states no claims upon which relief can be granted.  Hayward objects.  He asserts that he is alleging civil RICO claims against the defendant under 18 U.S.C. § 1964(c), and that he does not need to identify any contract provision which required the Bank to modify the mortgage or note terms.  The Bank filed a reply, arguing that Hayward does not state a claim for relief under § 1964(c).

The court construes Hayward's complaint as alleging claims for breach of contract and violation of 18 U.S.C. § 1964(c).

I.      Standing

First, the Bank argues that Hayward lacks standing to challenge the mortgage because he is "a non-borrower (and non-contributor) on the loan."  Doc. no. 4 at 5.  Hayward originally asserted in his objection that he had authority to challenge the mortgage on Ross's behalf because he was granted a power of attorney.  In a surreply, however, Hayward conceded that a power of attorney does not confer standing to bring claims, but argued that he had a right to challenge the foreclosure because he was named on the notice of foreclosure sale.  Then, in his supplemental memo, Hayward informed the court that Ross had died such that he was Ross's successor under the note.

To start, the Bank does not make clear the basis of its standing argument. The Bank's challenge appears to be directed not at constitutional or Article III standing but rather to what has sometimes been known as "prudential standing" or "statutory standing."  See Lexmark Intern., Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 & n.4 (2014) (discussing differences between Article III standing and "prudential" or "statutory" standing).[5]  In this regard, statutory or prudential standing generally "relates to whether the plaintiff has a cause of action," and it is a merits issue rather than a jurisdictional issue.  United States v. Catala, 870 F.3d 6,

_____

[5] The Bank's argument that Hayward lacks standing is sparse, consisting only of two conclusory sentences.

10 (1st Cir. 2017); Katz v. Pershing, 672 F.3d 64, 75 (1st Cir. 2012) ("The district court determined that the plaintiff lacked standing to bring these contract-based claims because she had no contract with the defendant. . . .  From an analytical standpoint, we think the better view is that when a plaintiff generally alleges the existence of a contract, express or implied, and a concomitant breach of that contract, her pleading adequately shows an injury to her rights."); Nisselson v. Lernout, 469 F.3d 143, 151 (1st Cir. 2006) ("The determination of who may maintain an otherwise cognizable claim turns on a question of prudential standing, not one of Article III standing.").  And unlike Article III standing, "the existence of statutory standing is not a prerequisite to a court's power to adjudicate a case." Catala, 870 F.3d at 10; Back Beach Neighbors Committee v. Town of Rockport, 63 F.4th 126, 129 n.2 (1st Cir. 2023) ("Because we find for the Town on the merits, we bypass the prudential question of whether the Committee, as opposed to its members, was the proper party to bring this lawsuit.").

Hayward has no trouble meeting the requirements for Article III standing, which are that he "must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." Lexmark Intern., 572 U.S. at 125.  Hayward alleges an injury in fact, namely, the foreclosure on the property that he owns.  That injury is traceable to the Bank's actions, as the Bank is foreclosing on Hayward's property under the mortgage.  And the injury is

redressable because a favorable resolution of Hayward's claims would preclude foreclosure under the mortgage, remedying the alleged injury.

The Bank argues that Hayward lacks prudential standing to bring his claims because he did not sign the promissory note.  Because Hayward has Article III standing, however, and because the court finds in the Bank's favor on its alternative arguments, the court need not rule on the Bank's standing argument.  See, e.g., Foisie v. Worcester Polytechnic Institute, 967 F.3d 27, 44 (1st Cir. 2020) ("Arguments concerning the absence of statutory standing, unlike arguments concerning the absence of constitutional standing, do not address a court's subject matter jurisdiction but, rather, address the merits of the plaintiff's claims."); Catala, 870 F.3d at 10 ("[A]n inquiring court may opt, in the interest of efficiency, to forgo an inquiry into statutory standing and reject a claim on the merits."); Blades v. Morgalo, 743 F. Supp. 2d 85, 91 (D.P.R 2010) ("The prudential standing doctrine is not jurisdictional in the manner that Article III standing is.").[6]  Accordingly, the court proceeds to the merits of Hayward's claims.

II.   Breach of Contract

As to Hayward's apparent breach of contract claim, the Bank contends that Hayward identifies no contract term which obliged it to offer a loan modification.

---

[6] To clarify, Hayward, who proceeds pro se, does not purport to bring any claims on Ross's behalf, for injuries suffered only by Ross, or under rights possessed only by Ross.  Hayward could not do so in any event because "[i]t is well-settled that a party has a right to represent himself in court, but may not represent another unless he is an attorney."   Fortin v. Ocwen Loan Servicing, LLC, No. 15-cv-122-JL, 2015 WL 5693115, at *3 (D.N.H. Sept. 28, 2015).

A breach of contract "occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract." Pro Done, Inc. v. Basham, 210 A.3d 192, 196 (N.H. 2019). Hayward failed to identify any term in any alleged contract which required the Bank to offer Hayward a loan modification with different terms than the one he was offered or a loan modification without a balloon payment. Neither Hayward's allegations concerning his "unfortunate financial circumstances" nor the allegation that the Bank's failure to offer a loan modification that was satisfactory to Hayward is sufficient to state a claim for breach of contract. See, e.g., Moore v. United States Department of Agriculture, No. 18-cv-187-JD, 2019 WL 162739, at *2 (D.N.H. Jan. 10, 2019); Mader v. Wells Fargo Bank, N.A., No. 16-cv-309-LM, 2017 WL 177619, at *4 (D.N.H. Jan. 17, 2017) ("This court has repeatedly held that 'lenders have no duty absent explicit contractual language to modify a loan or forbear from foreclosure.'"); see also Ruivo v. Wells Fargo Bank, N.A., No. 11-cv-466-PB, 2012 WL 5845452, at *3 (D.N.H. Nov. 19, 2012) ("Parties are bound by the agreements they enter into and the court will not use the implied covenant of good faith and fair dealing to force a party to rewrite a contract so as to avoid a harsh or inequitable result."). Since there is no allegation that the Bank failed to perform any promise that was part of its alleged contract(s) with Hayward, Hayward's breach of contract claim must be dismissed.

III.   Civil RICO, 18 U.S.C. § 1964(c)

Lastly, Hayward asserts that he raises a claim under the civil RICO statute, 18 U.S.C. § 1964(c). The Bank argues that such a claim necessarily fails.

To state a civil RICO claim, a plaintiff must allege four elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity.  Giuliano v. Fulton, 399 F.3d 381, 386 (1st Cir. 2005).  A pattern of racketeering activity is "at least two acts . . . within ten years of each other" that "violate[ ] one of the federal laws specified in the RICO statute."  Giuliano v. Fulton, 399 F.3d 381, 387 (1st Cir. 2005).  The list of activities which may be considered "racketeering activity" includes mail and wire fraud and is extensive, though all such activities could be fairly described as criminal in nature.  See Douglas v. Hirshon, 63 F.4th 49, 55 (1st Cir. 2023); 18 U.S.C. § 1961(1) (listing the eclectic activities which may constitute racketeering activity, including, inter alia, murder, kidnapping, gambling, robbery, fraud of various flavors, embezzlement, forgery, witness intimidation, counterfeiting, slave trafficking, sexual exploitation of children, and economic espionage).

Hayward alleges few facts about the Bank's conduct.  Hayward's allegations primarily consist of legal conclusions that the Bank committed mail fraud, wire fraud, and extortion.  At most, however, Hayward alleges that the Bank offered him a loan modification which Hayward felt was unfair because of the balloon payment.  Hayward also alleges that the Bank failed to offer him loan modification which he deemed to be fair, that Hayward declined to pay the loan under the offered terms, and that the Bank began foreclosure proceedings as a result.  None of these actions constitute mail fraud, wire fraud, or extortion, or any other kind of "racketeering

activity." Therefore, Hayward's pleadings fail to state any claim for relief under § 1964(c).

## CONCLUSION

For the foregoing reasons, the Bank's motion to dismiss (doc. no. 4) is granted. However, given Hayward's pro se status as well as his request in his surreply to "grant [him] other options if he is not able to defend this case," doc. no. 15 at 2, this dismissal is without prejudice to Hayward's right to amend his complaint. Any amended complaint must be filed on or before September 12, 2023, or the court will dismiss the complaint with prejudice and close the case. See Towle v. Ocwen Loan Servicing, LLC, No. 15-cv-189-LM, 2015 WL 4506964, at *2 (D.N.H. July 23, 2015).

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 23, 2023

cc:    Counsel of Record